IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DEVON FRYE,

    Plaintiff,

v.                                             Civil Action No. 3:25cv331

NELSON SMITH, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Devon Frye, a Virginia detainee proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to 42 U.S.C. § 1983.[1] The matter is now before the Court on a Motion to Dismiss (the "Motion to Dismiss") filed by Defendants Nelson Smith, Carla Zarrella, Jason Wilson, Nathan Moore, and Tonya Hurt ("Defendants"). (ECF No. 11.) As discussed below, the Motion to Dismiss addresses only one of the many claims Frye raises in his Complaint. (*See* ECF Nos. 1, 12.) Accordingly, although the Motion to Dismiss will be GRANTED, several of Frye's claims will remain pending, and Defendants will be directed to file, or expressly

---

[1] The statute provides, in pertinent part:

Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

decline to file, a motion for summary judgment with respect to the claims they have not yet answered, moved against, or otherwise opposed.[2]

### I.  Legal Standard

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(i), (ii); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more

---

[2] The Court provided Frye with the notice required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF No. 13.)  Frye filed a Response (ECF No. 16), and Defendants then filed a Reply (ECF No. 17).  The Motion to Dismiss is thus fully briefed and ready for consideration.

than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his or her complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted).

Here, in support of their Motion to Dismiss, Defendants rely on at least one exhibit attached to the Complaint: a November 16, 2024, request Frye filed regarding his night terrors and their effect on his roommate. (*See* ECF No. 12, at 4 (citing ECF No. 1-3, at 12).) As discussed further below, the cited exhibit is one of many similar documents appended and referred to in the Complaint. Because these materials are "integral to and explicitly relied on in the complaint," *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (citation omitted), the Court will consider them in assessing the Motion to Dismiss.

## II. The Complaint

### A.    Frye's Allegations

Frye is civilly committed in the Virginia Center for Behavioral Rehabilitation ("VCBR"). (ECF No. 1, at 1–2.) In his Complaint, he alleges, in relevant part, as follows:[3]

---

[3] The Court employs the pagination assigned by the CM/ECF docketing system and corrects the capitalization, spelling, and punctuation in quotations from Frye's submissions. The Court omits Frye's citations to exhibits filed with the Complaint.

4

11. On 6/23/23 Plaintiff began psychiatric treatment for diagnosed nightmares / night terrors by Dr. Abdulhamed at VCBR.

12. On 6/23/23 Plaintiff informed Defendant Nathan Moore that he was being treated for diagnosis of severe nightmares.

. . . .

14. On 6/27/23 Plaintiff contacted Defendant Tonya Hurt and asked if his new diagnosis of nightmares / night terrors would change his housing classification.

. . . .

16. Beginning on 7/8/23 the Plaintiff began to document, via GTL email, his night terror episodes and reporting them.

17. On or about 11/1/23 the Plaintiff was moved into a room by himself as a result of his treatment progress.

18. On 1/5/24 the Plaintiff discussed the possibility of him being forced to have a roommate with Dr. Abulhamed. The Plaintiff expressed his belief that him having a roommate would [cause] unnecessary danger to himself and any potential roommate. Following that conversation the Plaintiff spoke with his treatment team, and then reported back to Dr. Abdulhamed.

19. On 10/23/24 Plaintiff was informed by his treatment team that he was to be moved into a room with another resident as soon as possible. The Plaintiff immediately contacted Defendant Tonya Hurt about the move.

20. On 10/23/24 Plaintiff again contacted Defendant Tonya Hurt about his move and how it stood contrary to actions taken by herself, the housing committee, and the chief of security.

21. On 10/23/24 Plaintiff contacted Tanisha Mitchell (treatment team member) to express his concerns about Nathan Moore's motives for ordering Tonya Hurt to move him into a room with another resident.

22. Based upon Defendant Tonya Hurt's response to Plaintiff's email sent on 10/23/24, the Plaintiff attempted to clarify himself from a legal position.

23. On 10/28/24 Plaintiff personally notified Defendant Jason Wilson about the situation involving his night terrors, him being forced in the room with another resident, the danger that move posed, and Defendant Wilson's duty to ensure safety.

24. On 1/19/24, in accordance with Dr. Abdulhamed's recommendations, the Plaintiff contacted Defendant Nathan Moore about security concerns surrounding him being in the room with another resident. This establishes Defendant Moore's knowledge of danger prior to any assaults taking place.

25. On 10/28/24 Plaintiff turned in a move request to be placed in a single room. This request was denied by Defendant Tonya Hurt.

26. On 10/28/24 Plaintiff filed a complaint about his human rights being violated due to him being forced into a dangerous living situation. This complaint was refused processing by the complaint coordinator.

27. On 11/16/24 Plaintiff attacked his roommate during a night terror episode, sustaining a cut to his hand.

28. On 11/17/24 Plaintiff again filed a complaint about his housing assignment. Again, the complaint wasn't processed.

29. On 11/20/24 Plaintiff submitted another move request asking to be placed in a single occupancy room due to his violent night terrors. That request was again denied by Defendant Tonya Hurt.

30. On 11/27/24 Plaintiff had another night terror episode that involved him sleepwalking, and once again attacking his roommate.

31. On 12/19/24 Plaintiff again requested to move into a single occupancy room and Defendant Tonya Hurt denied this move. On 1/9/25 the Plaintiff appealed Defendant Hurt's decision to Defendant Jason Wilson. Defendant Wilson also denied the move request.

32. Defendant has been made aware by Plaintiff Devon Frye, his treatment team at VCBR, and by Dr. Abdulhamed of his nightmares / night terrors diagnosis, and the danger that living with another resident presents. Defendant Hurt, as well as the other listed defendants, continue to ignore the danger while shifting the blame.

33. On 10/4/24 the Plaintiff and Dr. Abdulhamed came to the joint consensus that the night terror episodes were stress related as well.

34. On 10/24/24 Defendants Nelson Smith and Carla Zarrella were emailed by the Plaintiff, via his family, about being forced to move in with someone, the danger that move posed, and why this move was an act of retaliation.

(ECF No. 1, at 3–6.)

6

## B.    Documents Submitted with the Complaint

Frye refers to, and has attached to the Complaint, a host of documents, including resident request forms (*see* ECF Nos. 1-1 through 1-18, *passim*); declarations of other VCBR residents (*see* ECF No. 1-6, at 5–6; ECF No. 1-15, at 1–2); formal complaint forms (*see* ECF No. 1-12, at 1; ECF No. 1-13, at 1); and facility notes (ECF No. 1-12, at 2; ECF No. 1-4, at 2).

Although these documents largely corroborate Frye's allegations regarding the dates and content of his requests and complaints, several of them undercut or contradict the Complaint's allegations. For instance, although Frye claims that being forced to share a room led to an increased risk of harm from his night terrors, the documents demonstrate that Frye's erratic behavior while asleep predated his transfer to a double-occupancy room. (*See* ECF No. 1-3, at 3 (complaining in January 2024, pre-transfer, about punching the wall and kicking his stool); ECF No. 1-3, at 6 (complaining in January 2024, pre-transfer, about running into the wall headfirst); ECF No. 1-3, at 9 (stating that he had a violent episode in February 2024, before he was transferred); ECF No. 1-3, at 10 (complaining in September 2024, pre-transfer, that his hands were swollen from punching the wall multiple times); ECF No. 1-3, at 11 (complaining in October 2024, pre-transfer, that he had awoken in the night with his fists raised).) In other words, these documents suggest that Frye's risk of harm was not mitigated by rooming alone and did not increase as a result of his changed room assignment.

Next, in the Complaint, Frye alleges that he assaulted his roommate on two occasions. (*See* ECF No. 1 ¶¶ 27, 30.) The exhibits he has submitted, however, suggest that Frye greatly exaggerated these allegations. As to the first incident, Frye apparently informed a staff member that "his roommate observed him punching the air in his sleep." (ECF No. 1-12, at 2.) As to the second incident, the alleged victim of the assault attested, "[i]nstead of striking me [Frye] hit the

7

metal locker that we share together," and that Frye had also "tr[ied] to pull [him] out of [his] bed." (ECF No. 1-15, at 1.)

Finally, the documents attached to the Complaint show that Defendants sought to house Frye with a roommate for therapeutic reasons, something Frye omits from his allegations. (*See* ECF No. 1-3, at 12 (request form from Frye in stating that the Housing Committee "believed that having a roommate to assist with pulling [Frye] out of these episodes or preventing [him] from harming [him]self was helpful"); ECF No. 1-17, at 2 (request form containing note from Dr. Abdulhamed that he had "presented [Frye's] case as it is to the housing committee" and that "[i]t was the committee decision that it is in your best interest to have a roommate for safety").)

## C.    Frye's Requested Relief and Legal Claims

Frye requests monetary damages and a declaration that Defendants' actions "violate[d] his rights under the Constitution and laws of the United States." (ECF No. 1, at 9.)

He identifies several claims for relief:

| | |
|---|---|
| Claim One | "Defendant Nelson Smith [breached his] common law duty of ordinary care towards the Plaintiff, and a statutory duty due to Virginia Code [§] 37.2-900 stating that Plaintiff is committed to DBHDS and 'custody' of the Commissioner for care, control, and treatment. Nelson Smith's negligence and deliberate indifference violate the Plaintiff's Fourteenth Amendment constitutional rights.[4] The harm to Plaintiff and others was foreseeable to Defendant Smith, and Defendant Smith had independent knowledge of the situation due to the email he received via Mr. Frye's family." (ECF No. 1 ¶ 37). |
| Claim Two | "Defendant Carla Zarrella [breached her] duty as Director of [Office of Sexually Violent Predator] Services to ensure the safety of Plaintiff and other residents. Ms. Zarrella's deliberate indifference to Plaintiff's medical diagnosis, and the retaliation of VCBR employees, constitutes [a] violation of Plaintiff's Fourteenth Amendment constitutional rights. Ms. Zarrella had independent knowledge of the situation due to the email she received via Mr. Frye's family." (ECF No. 1 ¶ 38.) |

---

[4] "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XVI, § 1.

Claim Three    "Given the fact that violent nightmares / night terrors are not only self-explanatory based on description, but the fact that the Plaintiff and Dr. Abdulhamed explained the risks to Defendants Jason Wilson, Nathan Moore, and Tonya Hurt as members of the Housing Committee, their collective deliberate indifference is blatant." (ECF No. 1 ¶ 39 (omitting quotation and citation beginning paragraph).)

Claim Four    "Defendant Jason Wilson has a duty as Facility Director to ensure the safe living environment for the Plaintiff. His deliberate indifference demonstrates his failure to abide by the 'professional judgment' ascribed to the Plaintiff under the *Youngberg* standard, thereby violating the Plaintiff's Fourteenth Amendment constitutional rights." (ECF No. 1 ¶ 40.)

Claim Five    "Defendant Nathan Moore displayed willful and wonton negligence by insisting or allowing Plaintiff to move into a room with another resident. Mr. Moore was not only familiar with the diagnosis of night terrors, and the danger posed during a night terror episode, he willingly violated the Plaintiff's Fourteenth Amendment right to equal protection. He did this by treating former resident James Lewis Jr. differently than he did the Plaintiff, despite them being similarly situated. Not only did Plaintiff have to move into a double occupancy room, Defendant Moore continued to force him to live in that environment after multiple attacks by the Plaintiff against his roommate. These actions are demonstrative of the intentional infliction of emotional distress, and retaliation, thereby violating the Plaintiff's First Amendment[5] rights and his Fourteenth Amendment rights." (ECF No. 1 ¶ 41.)

Claim Six    "Defendant Tonya Hurt, acting as Housing Coordinator, demonstrated blatant deliberate indifference to the Plaintiff's medical condition, and the danger that this condition posed to any potential roommate. Even after the Plaintiff attacked his roommate multiple times, Defendant Hurt did not use sound professional judgment. Given the fact that Ms. Hurt was instrumental in denying former resident James Lewis Jr. a roommate because of the danger that he posed, yet she didn't afford the Plaintiff the same care and treatment, she has violated the Plaintiff's clearly established right to equal protection under the law according to the Fourteenth Amendment." (ECF No. 1 ¶ 42.)

---

[5] "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people to peaceably assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

Claim Seven    "All defendants listed deviated from the proper standard of care, and didn't exercise professional judgment, which violates Plaintiff's Fourteenth Amendment rights on their face." (ECF No. 1 ¶ 43.)

### III. Analysis

#### A. Scope of the Complaint and Motion to Dismiss

In Claims One through Seven, Frye alludes to many possible bases for relief. In sum, the Court identifies claims arising under the Fourteenth Amendment's Due Process and Equal Protection Clauses, a claim for First Amendment retaliation, and claims for the state law torts of negligence, willful and wanton negligence, and intentional infliction of emotional distress ("IIED"). (*See* ECF No. 1 ¶¶ 37–43.)

Admittedly, these Claims are muddied and overlapping and not clearly or individually articulated. Even so, Frye invokes them, and in the Motion to Dismiss, counsel acknowledges that Frye does so. (*See* ECF No. 12, at 2–3 (noting Frye's allegations regarding differential treatment as compared to a former resident of VCBR, alleged violations of First and Fourteenth Amendment rights, and IIED and retaliation claims).) Despite this, counsel inexplicably addresses *only* Frye's Fourteenth Amendment due process claim but neither moves for only partial dismissal nor explains his decision not to address Frye's other claims. (*See* ECF No. 12, at 1–6.)[6]

---

[6] It appears that counsel believes Frye's Fourteenth Amendment due process claim acts as some type of threshold through which Frye must pass before his other claims may be heard. (*See* ECF No. 12, at 3 ("At the outset of assessing any 42 U.S.C. § 1983 claim, the Court must identify whether the alleged conduct affects a protected liberty or property interest." (internal quotation marks and citation omitted).) Counsel does not identify any precedent to suggest that this is the case, nor can the Court identify any. Rather, courts routinely address the full spectrum of claims civil detainees raise in suits under § 1983. *See, e.g., Hall v. Valaire*, No. 25-11193, 2025 WL 3641306 (11th Cir. Dec. 16, 2025) (affirming district court's decision to grant defendants summary judgment as to civil detainee's First and Fourteenth Amendment claims); *Frye v. Wilson*, No. 3:24-cv-641, 2026 WL 287180 (E.D. Va. Feb. 3, 2026) (granting motion to dismiss Frye's First and Fourteenth Amendment claims); *Cyr v. McMaster*, No. 8:24-cv-6067-

Below, the Court will consider Defendants' arguments to the extent they have been raised in the Motion to Dismiss, but it declines to address Frye's other claims without the benefit of proper briefing from the parties.

## B. Fourteenth Amendment – Liberty Interest Claim

Within several of the paragraphs set forth in the "Legal Claims" section of his Complaint, Frye asserts that Defendants knowingly put him and his roommate at risk of harm by forcing them to share a room when Frye would have been best served by rooming alone. (*See* ECF No. 1 ¶¶ 37–43.)[7] As explained below, Frye has a substantive liberty interest in his safety at VCBR, but Defendants did not infringe on that right under controlling law.

"The mere fact that [Frye] has been [civilly] committed under proper procedures does not deprive him of all substantive liberty interests under the Fourteenth Amendment." *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982) (citing *Vitek v. Jones*, 445 U.S. 480, 491–94 (1980)). Indeed, civilly detained individuals such as Frye retain individual liberty interests in safe conditions and freedom from bodily restraint. *Id.* "[T]hese interests," however, "are not absolute; indeed to some extent they are in conflict," *id.* at 319–20, and must be balanced with state interest. *Id.* at

---

DNC-WSB, 2025 WL 4417353, at *5–6, 18 (D.S.C. Nov. 5, 2025) (recommending motions to dismiss and for summary judgment addressing detainee's First and Fourteenth Amendment claims be granted), *R&R adopted*, 2025 WL 4417890 (D.S.C. Dec. 17, 2025).

[7] Frye repeatedly invokes the term "deliberately indifferent" in expressing his claims. (*See, e.g.*, ECF No. 1 ¶¶ 37–43.) This is terminology typically associated with claims regarding the conditions of one's confinement or the provision of inadequate medical care in the carceral context. In light of relevant and binding case law regarding constitutional claims raised by civil detainees such as Frye, *see, e.g.*, *Youngberg*, 457 U.S. at 315, the Court construes the claims using such language as seeking relief based on the existence of a substantive liberty interest to safety under the Fourteenth Amendment. *See Skinner v. Mannino*, No. TDC-20-1996, 2022 WL 228232, at *4 (D. Md. Jan. 26, 2022) ("[T]he Fourteenth Amendment . . . applies to claims of deliberate indifference to medical or mental health needs for a detainee not serving a prison sentence." (citing *Youngberg*, 457 U.S. at 315))).

11

321 (balancing state interest is an explicit part of the test). "[T]here are occasions in which it is necessary for the State to restrain the movement of [detainees]—for example, to protect them as well as others from violence." *Id.* at 320. Simultaneously, though, "an institution cannot protect its residents from all danger . . . if it is to permit them to have freedom of movement." *Id.*

Accordingly, to determine if a civilly detained individual has suffered a constitutional violation, a court must "weigh[] the [detainee's] interest" in safe conditions and freedom from bodily restraint "against the State's asserted reasons for restraining" those liberty interests. *Id.* at 321. In the civil detention context, "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Id.* (quoting *Youngberg v. Romeo*, 644 F.2d 147, 178 (3d Cir. 1980) (en banc) (Seitz, C.J., concurring)). Moreover, "decisions made by the appropriate professional are entitled to a presumption of correctness." *Youngberg*, 457 U.S. at 324.

Consistent with this standard, Frye fails to state a viable substantive due process claim. This is so because the Complaint does not establish that being forced to share a room resulted in any material change to Frye's safety or risk of harm. Rather, the Complaint and documents attached thereto show that Frye complained about having violent outbursts even during the time in which he was assigned to a single room. (*See* ECF No. 1-3, at 3 (complaining about punching the wall and kicking his stool); ECF No. 1-3, at 6 (complaining about running into the wall headfirst); ECF No. 1-3, at 9 (stating that he had a violent episode); ECF No. 1-3, at 10 (stating that his hands were swollen from punching the wall multiple times); ECF No. 1-3, at 11 (stating

12

that he had awoken with his fists raised).)[8] Accordingly, Frye cannot argue in good faith that his being housed with another VCBR resident subjected him to an *increased* risk of harm.

Even presuming that Frye *did* face an increased risk of harm, his housing assignment was the result of Defendants' exercise of "professional judgment," which again is "entitled to a presumption of correctness." *Youngberg*, 457 U.S. at 324. For instance, a request from Frye submitted on November 16, 2024, makes clear that Dr. Abdulhamed and the "Housing Committee" "believed that having a roommate to assist with pulling [Frye] out of these episodes or preventing [him] from harming [him]self was helpful." (ECF No. 1-3, at 12.) When, two days later, Frye submitted another request regarding night terrors and their effect on his roommate, Defendant Tonya Hurt responded that the Housing Committee had "noted and discussed" Frye's concerns. (ECF No. 1-3, at 16.) Additional documents confirm that Frye's frequent reports of concern were forwarded to, and considered by, his care team. (*See* ECF No. 1-3, at 20 (comment from Dr. Abulhamed stating that he had "updated housing," and that the committee "should be discussing it in the meeting"); ECF No. 1-3, at 21 (comment from Dr. Abdulhamed stating, "I have discussed it during the housing meeting in the past as you are aware"); ECF No. 1-7, at 1–2 (comment from Tanisha Mitchell stating that she had "made the Housing Committee aware of [his] concern" and relaying that "they will take that under advisement, if they have not already done so"); ECF No. 1-17, at 2 (comment from

---

[8] To the extent Frye's claim is based on the alleged harm or risk of harm his roommate at VCBR suffered, Frye is not entitled to relief. Frye cannot piggyback his claim based on the harm others may have faced, for his own safety is not at issue in such a claim, and he accordingly has no standing to seek relief under such a theory. *See Myers v. Loudon Cnty. Pub. Schs.*, 418 F.3d 395, 400 (4th Cir. 2005) (finding that the plaintiff had "no[] authority to litigate" claims on behalf of another).

Dr. Abdulhamed that he had "presented [Frye's] case as it is to the housing committee" and that "[i]t was the committee decision that it is in your best interest to have a roommate for safety").)

In short, Defendants, neither individually nor collectively, violated Frye's Fourteenth Amendment right to safety. Rather, as established by the exhibits appended to the Complaint, Defendants exercised professional judgment in concluding that Frye would be safer were he to share a room with another individual who could intervene when Frye had nightmares or night terror episodes. *See Youngberg*, 457 U.S. at 321. Frye has not made any showing to rebut the presumption that Defendants' exercise of professional judgment was not sound and correct. *Id.* at 324. Accordingly, Frye has failed to state a substantive due process claim under the Fourteenth Amendment. The portions of Claims One, Two, Three, Four, Six, and Seven alleging violations of Frye's Fourteenth Amendment substantive due process rights are DISMISSED.

### IV.  Conclusion

For the foregoing reasons, the Motion to Dismiss, (ECF No. 8), will be GRANTED. Frye's Fourteenth Amendment substantive due process claims will be DISMISSED pursuant to Fed. R. Civ. P. 12(b)(6). The parties will be directed to file any motions for summary judgment addressing the claims remaining before the Court, consistent with the discussion above, within sixty days.

An appropriate Order will accompany this Memorandum Opinion.

Date: 4/27/2026
Richmond, Virginia

_____/s/_____
M. Hannah Lauck
Chief United States District Judge

14