**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**DEVON FRYE,**

**Plaintiff,**

**v.** **Civil Action No. 3:25cv331**

**NELSON SMITH, *et al.*,**

**Defendants.**

# MEMORANDUM OPINION

Devon Frye, an individual civilly committed in the Virginia Center for Behavioral Rehabilitation ("VCBR") who is proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to 42 U.S.C. § 1983.[1] By Memorandum Opinion and Order entered April 27, 2026, the Court granted a Motion to Dismiss filed by Defendants Nelson Smith, Carla Zarrella, Jason Wilson, Nathan Moore, and Tonya Hurt ("Defendants") (ECF No. 11) and dismissed Frye's Fourteenth Amendment substantive due process claims against them. (ECF Nos. 19, 20.) The Court also directed the parties to file any motion for summary judgment as to Frye's remaining Fourteenth Amendment equal protection, First Amendment retaliation, and state law tort claims, or expressly decline to do so, within sixty (60) days thereof. (ECF Nos. 19, 20.)

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

The Defendants filed a Motion for Summary Judgment on June 26, 2026. (ECF No. 21.) The Court provided Frye with the notice required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), but he did not respond. (ECF No. 23.) The Motion for Summary Judgment is thus fully briefed and ready for consideration. For the reasons stated below, the Motion for Summary Judgment will be GRANTED and the action DISMISSED.

## I. Summary of Claims and Allegations

### A. Frye's Allegations

In his Complaint, Frye alleges, in relevant part, as follows:[2]

11. On 6/23/23 Plaintiff began psychiatric treatment for diagnosed nightmares / night terrors by Dr. Abdulhamed at VCBR.

12. On 6/23/23 Plaintiff informed Defendant Nathan Moore that he was being treated for diagnosis of severe nightmares.

. . . .

14. On 6/27/23 Plaintiff contacted Defendant Tonya Hurt and asked if his new diagnosis of nightmares / night terrors would change his housing classification.

. . . .

16. Beginning on 7/8/23 the Plaintiff began to document, via GTL email, his night terror episodes and reporting them.

17. On or about 11/1/23 the Plaintiff was moved into a room by himself as a result of his treatment progress.

18. On 1/5/24 the Plaintiff discussed the possibility of him being forced to have a roommate with Dr. Abulhamed. The Plaintiff expressed his belief that him having a roommate would [cause] unnecessary danger to himself and any potential roommate. Following that conversation the Plaintiff spoke with his treatment team, and then reported back to Dr. Abdulhamed.

[2] The Court employs the pagination assigned by the CM/ECF docketing system and corrects the capitalization, spelling, and punctuation in quotations from Frye's submissions. The Court omits Frye's citations to exhibits filed with the Complaint.

19. On 10/23/24 Plaintiff was informed by his treatment team that he was to be moved into a room with another resident as soon as possible. The Plaintiff immediately contacted Defendant Tonya Hurt about the move.

20. On 10/23/24 Plaintiff again contacted Defendant Tonya Hurt about his move and how it stood contrary to actions taken by herself, the housing committee, and the chief of security.

21. On 10/23/24 Plaintiff contacted Tanisha Mitchell (treatment team member) to express his concerns about Nathan Moore's motives for ordering Tonya Hurt to move him into a room with another resident.

22. Based upon Defendant Tonya Hurt's response to Plaintiff's email sent on 10/23/24, the Plaintiff attempted to clarify himself from a legal position.

23. On 10/28/24 Plaintiff personally notified Defendant Jason Wilson about the situation involving his night terrors, him being forced in the room with another resident, the danger that move posed, and Defendant Wilson's duty to ensure safety.

24. On 1/19/24, in accordance with Dr. Abdulhamed's recommendations, the Plaintiff contacted Defendant Nathan Moore about security concerns surrounding him being in the room with another resident. This establishes Defendant Moore's knowledge of danger prior to any assaults taking place.

25. On 10/28/24 Plaintiff turned in a move request to be placed in a single room. This request was denied by Defendant Tonya Hurt.

26. On 10/28/24 Plaintiff filed a complaint about his human rights being violated due to him being forced into a dangerous living situation. This complaint was refused processing by the complaint coordinator.

27. On 11/16/24 Plaintiff attacked his roommate during a night terror episode, sustaining a cut to his hand.

28. On 11/17/24 Plaintiff again filed a complaint about his housing assignment. Again, the complaint wasn't processed.

29. On 11/20/24 Plaintiff submitted another move request asking to be placed in a single occupancy room due to his violent night terrors. That request was again denied by Defendant Tonya Hurt.

30. On 11/27/24 Plaintiff had another night terror episode that involved him sleepwalking, and once again attacking his roommate.

31. On 12/19/24 Plaintiff again requested to move into a single occupancy room and Defendant Tonya Hurt denied this move. On 1/9/25 the Plaintiff appealed Defendant Hurt's decision to Defendant Jason Wilson. Defendant Wilson also denied the move request.

32. Defendant has been made aware by Plaintiff Devon Frye, his treatment team at VCBR, and by Dr. Abdulhamed of his nightmares / night terrors diagnosis, and the danger that living with another resident presents. Defendant Hurt, as well as the other listed defendants, continue to ignore the danger while shifting the blame.

33. On 10/4/24 the Plaintiff and Dr. Abdulhamed came to the joint consensus that the night terror episodes were stress related as well.

34. On 10/24/24 Defendants Nelson Smith and Carla Zarrella were emailed by the Plaintiff, via his family, about being forced to move in with someone, the danger that move posed, and why this move was an act of retaliation.

(ECF No. 1, at 3–6.)

### B. Frye's Remaining Claims

The remaining claims[3] are:

Claim One "Defendant Nelson Smith [breached his] common law duty of ordinary care towards the Plaintiff, and a statutory duty due to Virginia Code [§] 37.2-900 stating that Plaintiff is committed to DBHDS and 'custody' of the Commissioner for care, control, and treatment. . . . The harm to Plaintiff and others was foreseeable to Defendant Smith, and Defendant Smith had independent knowledge of the situation due to the email he received via Mr. Frye's family." (ECF No. 1 ¶ 37).

Claim Two "Defendant Carla Zarrella [breached her] duty as Director of [Office of Sexually Violent Predator] Services to ensure the safety of Plaintiff and other residents. . . . [T]he retaliation of VCBR employees[] constitutes [a] violation of Plaintiff's Fourteenth Amendment constitutional rights. Ms. Zarrella had independent knowledge of the situation due to the email she received via Mr. Frye's family." (ECF No. 1 ¶ 38.)

[3] As recounted above, the Court granted the Defendants' Motion to Dismiss and dismissed Frye's Fourteenth Amendment substantive due process rights claims in its April 27, 2026 Memorandum Opinion and Order. Accordingly, the Court omits from this recitation Claim Three and the elements of Claims One, Two, Four, Six, and Seven in which Frye raised his substantive due process arguments.

Claim Four "Defendant Jason Wilson has a duty as Facility Director to ensure the safe living environment for the Plaintiff. . . ." (ECF No. 1 ¶ 40.)

Claim Five "Defendant Nathan Moore displayed willful and wanton negligence by insisting or allowing Plaintiff to move into a room with another resident. Mr. Moore was not only familiar with the diagnosis of night terrors, and the danger posed during a night terror episode, he willingly violated the Plaintiff's Fourteenth Amendment right to equal protection. He did this by treating former resident James Lewis Jr. differently than he did the Plaintiff, despite them being similarly situated. Not only did Plaintiff have to move into a double occupancy room, Defendant Moore continued to force him to live in that environment after multiple attacks by the Plaintiff against his roommate. These actions are demonstrative of the intentional infliction of emotional distress, and retaliation, thereby violating the Plaintiff's First Amendment[4] rights and his Fourteenth Amendment rights." (ECF No. 1 ¶ 41.)

Claim Six "Defendant Tonya Hurt, acting as Housing Coordinator . . . was instrumental in denying former resident James Lewis Jr. a roommate because of the danger that he posed, yet she didn't afford the Plaintiff the same care and treatment, [so] she has violated the Plaintiff's clearly established right to equal protection under the law according to the Fourteenth Amendment." (ECF No. 1 ¶ 42.)

Claim Seven "All defendants listed deviated from the proper standard of care . . . ." (ECF No. 1 ¶ 43.)

## **II. Standard for Summary Judgment**

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[4] "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324.

As a general rule, a nonmovant must respond to a motion for summary judgment with evidence. *Celotex Corp.*, 477 U.S. at 324. When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). Additionally, the nonmovant must identify what parts of the record support his argument that facts remain in dispute. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In reviewing a summary judgment motion, the court "must consider the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in that party's favor." *Mitchell v. Rice*, 954 F.2d 187, 190 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Similarly, "conclusory allegations or denials, without more, are insufficient to preclude

granting [a] summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993)).

In support of their Motion for Summary Judgment, the Defendants submitted a sworn declaration by Hurt. (ECF No. 22-1.) Thus, at this stage, the Court is tasked with assessing whether Frye "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *see also Celotex Corp.*, 477 U.S. at 324. Of course, the facts offered by an affidavit or sworn declaration must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). The sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.*

As noted above, Frye failed to respond to the Motion for Summary Judgment. Nevertheless, the Court will consider the records attached to his Complaint, although it is not properly sworn.[5] These attachments include numerous Audit Requests (i.e., notations of requests

---

[5] At the conclusion of his Complaint, Frye included the following verification:

> I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

(ECF No. 1, at 10.) Frye's verification is virtually identical to one that this Court previously rejected in *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, *2–3 (E.D. Va. June 1, 2011), and is substantially similar to one that the United States Court of Appeals for the Fourth Circuit found to be lacking in *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001). Where a verification is made "upon information and belief," it "is insufficient for the purposes of opposing a motion for summary judgment because such verification avoids the possibility of perjury." *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991); *see also Causey v. Balog*, 162 F.3d 795, 803 n.4 (4th Cir. 1998) (citations omitted) ("Because [the court] cannot assess whether [the plaintiff] had first hand knowledge of [the alleged] facts or whether he is competent to testify to them, [the court] cannot consider them in [its summary

Frye made and VCBR's responses) (ECF Nos. 1-1 through 1-6, at 1–2; ECF Nos. 1-7 through 1-10; ECF No. 1-17, at 1–2; ECF No. 1-18); Frye's VCBR Requests for Resident Moves (ECF No. 1-11; ECF No. 1-14, at 1; ECF No. 1-16); two institutional Formal Complaint Forms (ECF No. 1-12, at 1; ECF No. 1-13); two [Department of Behavioral Health and Developmental Services ("DBHDS")] Facility Notes (ECF No. 1-12, at 2; ECF No. 1-14, at 2); a VCBR Resident Request/Correspondence Form (ECF No. 17-1, at 3); a sworn declaration from Frye's roommate, Cortez Jacks (ECF No. 1-15); and, a sworn declaration and Request for Resident Moves from Lewis, the former resident Frye refers to as a comparator in Claims Five and Six (ECF No. 1-6, at 3, 5–6).

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Frye.

## III. Undisputed Facts

Hurt was VCBR's Housing Coordinator and chair of the Housing Committee at the times relevant to Frye's Complaint. (ECF No. 22-1 ¶¶ 3, 6.) Hurt avers that "[t]he Housing Committee considered each of Frye's requests for a single bedroom referenced in the Complaint," and that, "[i]n considering those requests, the Housing Committee did not ever receive evidence that any roommate of Frye at VCBR expressed fear for their safety due to Frye," or "evidence independent of allegations from Frye that Frye assaulted or caused harm to any roommate at VCBR." (ECF No. 22-1 ¶¶ 7–9.) Hurt continues that "Frye has not ever been

---

judgment] review."). As such, the Court must consider the contents of Frye's Complaint as "mere pleading allegations." *Hogge*, 2011 WL 2161100, at *3 (quoting *Walker*, 11 F. App'x at 274). Consequently, the Complaint fails to constitute admissible evidence. *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

denied standard procedures at VBCR for requesting a single room, which procedures remain open to him." (ECF No. 22-1 ¶ 10.) Hurt states that "[n]one of Frye's requests for a single bedroom referenced in the Complaint were denied with discriminatory animus." (ECF No. 22-1 ¶ 11.)

In former resident Lewis's Request for Resident Moves, attached to Frye's Complaint, Lewis asked "to have Mr. William Harlow as [his] roommate." (ECF No. 1-6, at 3.) Lewis claimed that he "really need[s] to have access to a friend that I can talk to at anytime. Also, I believe that I would be a positive influence on him, as I have got a conditional release already. I can share with him exactly how I got it!" (ECF No. 1-6, at 3.) Hurt responded on June 6, 2023, that Lewis was "not eligible to be double-bunked. This has been addressed again with housing and for security concerns it has been denied. Your treatment team as been made aware and will be discussing it with you as well." (ECF No. 1-6, at 3.)

In his sworn declaration, Lewis states that he was diagnosed with night terrors in 2008 and that the condition caused him to sleepwalk, fight, punch doors and other people, throw "others into walls, and hit two staff members, all while totally asleep." (ECF No. 1-6, at 5.) Lewis claims that he had "been denied entrance into the Transitions Program due to me being a threat to any resident that would be assigned to be my roommate, even though I have not had an episode in over two years." (ECF No. 1-6, at 5.) Lewis asserts that his "night terror history is the main reason that security will not let me have a roommate here at VCBR." (ECF No. 1-6, at 5.)

Although Frye, like Lewis, suffers from night terrors, he acknowledged in a November 16, 2024 Audit Request that he had been assigned a roommate because "both [his therapist] and the Housing Committee believed that having a roommate to assist me with pulling me out of

these episodes or preventing me from harming myself was helpful." (ECF No. 1-3, at 12.) In response to a December 4, 2024 Audit Request from Frye complaining about being assigned to a double room, Frye's therapist wrote that the Housing Committee had decided that "it is in your best interest to have a roommate for safety." (ECF No. 1-17, at 2.) Other Audit Requests amplify the therapist's assessment. (*See* ECF No. 1-3, at 3 (Frye complaining in January 2024, before being assigned a roommate in October 2024, about punching the wall and kicking his stool); ECF No. 1-3, at 6 (Frye complaining in January 2024 about running into the wall headfirst); ECF No. 1-3, at 9 (Frye stating that he had a violent episode in February 2024); ECF No. 1-3, at 10 (Frye complaining in September 2024 that his hands were swollen from punching the wall multiple times); ECF No. 1-3, at 11 (Frye complaining in October 2024 that he had awoken in the night with his fists raised).)

Frye's Complaint also alleges that he assaulted his roommate on two occasions. (ECF No. 1 ¶¶ 27, 30.) As to the first incident, a DBHDS Facility Note shows Frye informed a staff member that "his roommate observed him punching the air in his sleep." (ECF No. 1-12, at 2.) As to the second incident, Jacks attested in his sworn declaration that "[i]nstead of striking me [Frye] hit the metal locker that we share together," and that Frye had also "tr[ied] to pull [him] out of [his] bed." (ECF No. 1-15, at 1.)

## IV. Analysis

### A. First Amendment Retaliation

Frye alleges in Claim Five that Moore engaged in First Amendment retaliation when Moore "move[d] [Frye] into a double occupancy room" and "continued to force [Frye] to live in that environment after multiple attacks by [Frye] against his roommate." (ECF No. 1 ¶ 41.) "A First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff

engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537 (4th Cir. 2017) (citation omitted).

As to the first and second elements, Frye has not identified what constitutionally protected activity he was engaged in or how Moore denying his requests for a single room adversely affected his First Amendment rights. Frye's First Amendment retaliation claim fails for this reason alone. Moreover, as to the third element, causation, a plaintiff must adduce facts sufficient to show a causal connection between the First Amendment activity and the alleged adverse action. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Roncales v. Cnty. of Henrico*, 451 F. Supp. 3d 480, 495 n.11 (E.D. Va. 2020) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019)).

Whatever unidentified constitutionally protected activity Frye may have been engaged in and however being assigned a roommate may have adversely affected his First Amendment rights, the record establishes that his housing assignment was based on a therapeutic interest that he have a roommate to "pull[] [him] out of [his] episodes or preventing [him] from harming [himself]." (ECF No. 1-3, at 12.) Thus, Frye fails to establish a retaliatory causal relationship between any constitutionally protected activity and Moore's decision to house him with a

roommate. The Motion for Summary Judgment will be GRANTED as to the portion of Claim Five alleging First Amendment retaliation.[6]

**B. <u>Fourteenth Amendment Equal Protection</u>**

Frye alleges in Claims Five and Six that Moore and Hurt denied him equal protection by "treating [Lewis] different than [Frye], despite them being similarly situated" and "denying [Lewis] a roommate because of the danger he posed" without "afford[ing] [Frye] the same care and treatment." (ECF No. 1 ¶¶ 41–42.) "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* (citations omitted).

The record shows that any unequal treatment between Lewis and Frye was not the result of intentional or purposeful discrimination but stemmed from the individualized safety risks each of them presented. Lewis averred in his sworn declaration that the Housing Committee denied his request for a roommate because he would be "a threat to any resident that would be assigned." (ECF No. 1-6, at 5.) In other words, the Housing Committee determined that Lewis was a danger to others and denied his request for a roommate. In contrast, Frye himself acknowledged that he had been assigned a roommate because "both [his therapist] and the Housing Committee believed that having a roommate to assist me with pulling me out of these

---

[6] To the extent that Frye alleges that "the retaliation of VCBR employees[] constitutes [a] violation of Plaintiff's Fourteenth Amendment constitutional rights" in Claim Two (ECF No. 1 ¶ 38), he has not attributed such retaliation to any specific employee or identified an action that adversely affected a protected activity. Accordingly, the Motion for Summary Judgment will be granted with respect to this portion of Claim Two.

episodes or preventing me from harming myself was helpful." (ECF No. 1-3, at 12.) In other words, the Housing Committee determined that Frye was a danger to himself, and a roommate could mitigate that danger, so it denied his request for a single room.

Thus, Frye fails to establish that he and Lewis were similarly situated or that the difference in treatment was the result of intentional or purposeful discrimination. The Motion for Summary Judgment will be GRANTED as to the portions of Claim Five and Claim Six alleging violations of Fourteenth Amendment equal protection.

### C. State Law Tort Claims

Frye alleges in Claim One that Smith was negligent for breaching his standard of care to Frye under common law and Va. Code Ann. § 37.2-900.[7] (ECF No. 1 ¶ 37.) Frye alleges in Claim Two that Zarrella breached her duty as Director of Sexually Violent Predator Services. (ECF No. 1 ¶ 38.) Although he does not expressly allege any breach, Frye asserts in Claim Four that Wilson had "a duty as Facility Director to ensure [Frye's] safe living environment." (ECF No. 1 ¶ 40.) Frye alleges in Claim Five that Moore was willfully and wantonly negligent and caused intentional infliction of emotional distress. (ECF No. 1 ¶ 41.) Finally, Frye alleges in Claim Seven that the Defendants "deviated from the proper standard of care." (ECF No. 1 ¶ 43.) To the extent that these allegations raise claims of negligence, willful and wanton negligence, and intentional infliction of emotional distress, they arise under Virginia state law. *See Griffin v. Shively*, 315 S.E.2d 210, 212–13 (Va. 1984) (distinguishing Virginia torts of negligence and willful and wanton negligence); *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974) (recognizing and stating the elements of intentional infliction of emotional distress).

---

[7] The statute merely provides definitions for terms used in Chapter 9 of Title 37.2 of the Code of Virginia. Va. Code Ann. § 37.2-900 (West 2026). It neither confers rights nor imposes duties.

"The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). "Although a federal court has discretion to assert pendent jurisdiction over state claims even when no federal claims remain, certainly if the federal claims are dismissed before trial . . . the state claims should be dismissed without prejudice." *Alexandria Resident Council, Inc. v. Alexandria Redev. & Hous. Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001) (citations, alterations, and internal quotation marks omitted).

Here, the Court declines to exercise supplemental jurisdiction over Frye's state law tort claims. Accordingly, the portions of Claim One, Two, Four, Five, and Seven alleging negligence, willful and wanton negligence, and intentional infliction of emotional distress will be DISMISSED WITHOUT PREJUDICE.

## V. Conclusion

For the foregoing reasons, the Motion for Summary Judgment (ECF No. 21) will be GRANTED. Claim Three and the portions of Claims One, Two, Four, Six, and Seven alleging violation of Frye's substantive due process rights will be DISMISSED WITH PREJUDICE. The portions of Claims Two, Five, and Six alleging First Amendment retaliation and violations of Frye's Fourteenth Amendment equal protection rights will be DISMISSED WITH PREJUDICE. The portions of Claims One, Two, Fourt, Five, and Seven alleging violations of state law claims will be DISMISSED WITHOUT PREJUDICE.

An appropriate Final Order will accompany this Memorandum Opinion.

/s/ MHL
M. Hannah Lauck
Chief United States District Judge

Date: 10/26/26
Richmond, Virginia